# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **SAMUEL W. WEICHT,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **Case No. CIV 06-055-RAW-KEW** |
| | ) | |
| **WALTER DINWIDDIE, Warden,** | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge on petitioner's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate currently incarcerated at Mack Alford Correctional Center in Stringtown, Oklahoma, attacks his conviction in Sequoyah County District Court Case Number CF-2001-367 for Second Degree Arson (Count 1), Larceny of an Automobile (Count 2), Third Degree Arson (Count 3), and Second Degree Burglary (Count 4). He sets forth the following grounds for relief:

I.   Petitioner's fundamental rights to due process and equal protection of the law were violated when the only evidence regarding his participation in the crimes in this case was the uncorroborated testimony of the accomplice.

II.  Petitioner's fundamental rights to due process and equal protection of the law were violated when petitioner's jury trial was not initiated within the time constraints of the Interstate Agreement on Detainers Act.

III. Petitioner's fundamental rights to due process and equal protection of the law were violated when he was deprived of a speedy trial.

IV.  Petitioner's fundamental rights to due process and equal protection of the law were violated when admission of evidence of other crimes during the first stage of trial confused the issues, unfairly prejudiced petitioner, and deprived him of a fair trial.

V. Petitioner's fundamental rights to due process and equal protection of the law were violated when the record does not reflect that he made a knowing and voluntary waiver of counsel in electing to proceed pro se at preliminary hearing; petitioner was prejudiced in this course of action, because the evidence at preliminary hearing was not sufficient to bind him over for trial.

VI. Petitioner's fundamental rights to due process and equal protection of the law were violated, and the burglary conviction must be reversed and dismissed, because the State failed to prove the essential element of breaking.

The respondent concedes that petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review and has submitted the following records to the court for consideration in this matter:

A. Petitioner's brief and reply brief in his direct appeal.

B. The State's brief in petitioner's direct appeal.

C. Summary Opinion affirming petitioner's Judgment and Sentence. *Weicht v. State*, No. F-2003-1383 (Okla. Crim. App. Feb. 18, 2005).

D. Jury Instructions Nos. 22-27.

E. Excerpts of petitioner's jury trial transcript.

F. Petitioner's detainer from the Missouri Department of Corrections.

G. Information in Sequoyah County District Court Case No. CF-2001-367.

H. Excerpt of petitioner's preliminary hearing transcript.

I. Petitioner's motion to dismiss Case No. CF-2001-367 for failure to prosecute, filed October 23, 2001.

J. Petitioner's motion to dismiss Case No. CF-2001-367 for failure to prosecute, filed February 20, 2003.

K.     Excerpt of petitioner's September 29, 2003, motions hearing transcript.

L.     Jury Instruction No. 29.

M.     Docket sheet for Sequoyah County District Court Case No. CF-2001-367.

N.     Letter from petitioner to Sequoyah County District Court Judge Sprouse, dated January 12, 2003.

O.     Complete transcripts of petitioner's preliminary hearing, motions hearing, and jury trial.

**Facts**

The State set forth the facts of the case in its direct appeal brief:

On April 14, 1999, around 7:00 a.m., Ronald Wheat, an agent with the Oklahoma State Fire Marshal's Office, was called to a fire on the property of Bill and Cyndi Jetton, located in Cosner Bottoms in Sequoyah County, Oklahoma, about one mile from the Arkansas border (Tr. 62-65). When he arrived, Agent Wheat saw that the dwelling located thereon had burned down to the floor level and was in fact still burning (Tr. 63). Based on the burn patterns, Agent Wheat determined that the fire had not been accidentally started, but had been intentionally set (Tr. 65-66, 68-69; State's Exhibit 1).

Also located on the property were a shed and some airplane hangers (Tr. 63-64). Surveying these areas as well, Agent Wheat saw that the lock to the door of the shed had been knocked off and entry had been made (Tr. 66-67). Inside, Agent Wheat noted that the ladder to the attic was down and that items inside had been shuffled around (Tr. 67). When the shed, or shop as Mr. Jetton referred to it, was checked out by Mr. Jetton, he determined that several items were missing therefrom. In particular, Mr. Jetton found that the following items were missing: a power unit, a tubing bender, floor duct, an air tank, a radio, and a go-cart (Tr. 120, 123-25).

On this same date, Agent Wheat was alerted to another arson near the Jetton property. On the way to the Jetton property, the fire department had noticed a burning pickup truck. The next day, Agent Wheat investigated the same (Tr. 69). Agent Wheat determined that the fire had started in the passenger seat. Like the fire on the Jetton property, Agent Wheat determined that the fire was not caused by accidental means (Tr. 69-70; State's Exhibit 2).

The pickup truck was a 1998 Chevrolet extended cab pickup owned by Darvin McKenzie (Tr. 70-71; State's Exhibit 2).

After investigating initial leads, Agent Wheat was unable to determine who was responsible for the fires (Tr. 71-74). However, the case became "unstalled" when Agent Wheat received a call from another state fire marshal agent. Based on that call, Agent Wheat went to Columbus, Kansas, and interviewed the defendant's brother, Randall Weicht. As a result of that interview, Agent Wheat determined that the fires had been started by the defendant, Mr. Weicht, and John Wakeley (Tr. 74-75). Agent Wheat advised Mr. Jetton of his determination and also told him that his stolen property was more than likely located in Neosho, Missouri (Tr. 75).

When Mr. Jetton went to Neosho on June 29, 1999, he was able to recover some of his stolen property. Mr. Jetton found his property stored in a garage at the Neosho Police Department. His property was among items recovered from the defendant's residence, Mr. Weicht's residence, and a storage unit obtained by Mr. Weicht and Mr. Wakeley (Tr. 125-28, 130, 137-41; State's Exhibit 3). In the prior month, the defendant himself had been in the garage with Neosho Police Department Captain John Trimble. At that time, the defendant himself pointed out items taken from Mr. Jetton (Tr. 166-70).

Mr. Wakeley testified against the defendant at trial. Mr. Wakely testified that he had known the defendant since 1997, and that on April 14, 1999, he, Mr. Weicht, and the defendant were at the airport in Sequoyah County (Tr. 148). Mr. Wakeley testified that they came to Sequoyah County from Neosho on the evening of April 13, 1999, "to remove items from an airport, and a house, and a garage" (Tr. 148-49). Before coming to the airport, however, they stole a Chevy pickup from a house. Mr. Wakeley drove the pickup to the airport, while the defendant and Mr. Weicht drove the vehicle they arrived in (Tr. 148-50).

At the airport around midnight or after, all of them went first into the house. Mr. Wakeley then went to the shop to remove items. Mr. Weicht joined him there, too, for a while and removed some items. At one point, Mr. Wakeley saw the defendant and Mr. Weicht come out of the house, which was on fire. The defendant and Mr. Weicht then helped Mr. Wakeley finish loading their vehicle, and they all left (Tr. 152-55, 160).

Mr. Wakeley, still in the Chevy pickup, followed the defendant and Mr.

Weicht from the property. As planned, the Chevy pickup was abandoned and lit on fire. Mr. Wakeley testified that the fire to the pickup was set with gasoline in the seat of the vehicle. The three of them then returned to Neosho (Tr. 155-57). Mr. Wakeley testified that the property was taken to Mr. Weicht's home and to their storage building (Tr. 157-58, 162).

Mr. Wakeley testified that this was not the first time that they had done something like this and that they used the storage building to house the items they stole (Tr. 158-59, 163). Mr. Wakeley particularly testified about another incident in Oswego, Kansas. There, in the early morning hours, the three of them set an airplane on fire in a hanger. The fire was set by putting fuel on the seat and lighting it (Tr. 159-61). Kevin Kitterman of the Kansas State Fire Marshal's Office also testified about the Oswego incident (Tr. 175-76, 184-85, 188).

(Docket #6-4 at 8-11).

## Ground I: Accomplice Testimony

Petitioner alleges the only evidence concerning his participation in the crimes was the uncorroborated testimony of John Wakeley. Pursuant to Okla. Stat. tit. 22, § 742, "[a] conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense . . .."

The record shows that the jury was instructed on the corroboration necessary to convict petitioner using the accomplice's testimony (Docket #6-5 at 7-12). On direct appeal of petitioner's conviction, the Oklahoma Court of Criminal Appeals (OCCA) held that "evidence corroborating an accomplice's testimony need not directly implicate the defendant itself, and certainly need not be sufficient standing alone to warrant a conviction. The weight of corroborating evidence is a question for the jury." *Weicht v. State*, No. F-2003-383, slip op. at 2 (Okla. Crim. App. Feb. 18, 2005). The OCCA found that petitioner's "own admission as to the source of the stolen property was sufficient for the jury to conclude that

the accomplice testimony was credible." *Id.* (citations omitted). The dissent, however, found there was no corroborating testimony for the two arson counts. *Id.*, slip op. at 6 (Chapel, J., dissenting).

The respondent asserts this proposition raises a state law claim, not a constitutional concern that may be addressed on habeas review. "The Constitution does not prohibit convictions based primarily on accomplice testimony." *Scrivner v. Tansy*, 68 F.3d 1234, 1239 (10th Cir. 1995) (citations omitted), *cert. denied*, 516 U.S. 1178. Because there is no constitutional requirement that an accomplice's testimony be corroborated, the court "need not address [petitioner's] claimed deprivation of protection under state law." *Foster v. Ward*, 182 F.3d 1177, 1193 (10th Cir. 1999), *cert. denied*, 529 U.S. 1027 (2000).

Despite the state law nature of this claim, the Tenth Circuit has acknowledged that "an error of state law might rise to the level of a constitutional violation required for habeas relief if it resulted in a fundamentally unfair trial." *Boyd v. Ward*, 179 F.3d 904, 921-22 (10th Cir. 1999) (citations omitted), *cert. denied*, 528 U.S. 1167 (2000). The *Boyd* court, however, deferred to the OCCA's determination that no state law violation occurred. *Id.* at 922 (citing *Davis v. Executive Dir. of Dep't of Corr.*, 100 F.3d 750, 771 (10th Cir. 1996)). Here, the court finds any state law error regarding corroboration did not result in a fundamentally unfair trial. This ground for habeas corpus relief fails.

**<u>Ground II:  Interstate Agreement on Detainers</u>**

Petitioner next alleges his trial was not initiated within the time constraints of the Interstate Agreement on Detainers Act. On direct appeal the OCCA found the Interstate Agreement on Detainers (IAD) did not apply to petitioner's case:

> The IAD is aimed at avoiding the prejudicial effect of detainers in favor of one jurisdiction lodged against prisoners serving time in another. Okla.

Stat. tit. 22, § 1347 (Article I).  This purpose is not served when the person ceases to be subject to custody in the other jurisdiction before the time limits in the Agreement have been reached.  *See Swanigan v. United States*, 853 A.2d 742, 746-47 (D.C. App. 2004); *State v. Burnett*, 798 A.2d 96, 99 (N.J. Super. 2002); *Cunningham v. State*, 14 S.W.3d 869, 871 (Ark. 2000); *State v. Holley*, 571 A.2d 892, 896 (Md. 1990).  The IAD is triggered by the actual filing of a detainer against a prisoner held in custody in another jurisdiction.  *Gilbreath v. State*, 651 P.2d 699 (Okla. 1982).  The detainer in this case was filed less than one week before [petitioner] discharged a prison sentence in Missouri.  Once [he] ceased to be a prisoner in another state, the provisions of the IAD no longer applied to him.

*Weicht*, slip op. at 2-3.

Pursuant to Article III(a) of the Interstate Agreement on Detainers,

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for final disposition to be made of the indictment, information or complaint . . . .

Okla. Stat. tit. 22, § 1347.  Article IV of the IAD shortens the time for bringing a defendant to trial in the receiving state to 120 days, when the request for final disposition is made by the prosecuting authority.  *Id.*

The Tenth Circuit Court of Appeals has held that the "rights created by the IADA are statutory, not fundamental, constitutional, or jurisdictional in nature." *Greathouse v. United States*, 655 F.2d 1032, 1034 (10th Cir. 1981), *cert. denied*, 455 U.S. 926 (1982).  Therefore, an alleged IAD violation might be proper grounds for habeas relief only if "special circumstances" exist. *Knox v. Wyoming Dep't of Corrections*, 34 F.3d 964, 967 (10th Cir. 1994) (quoting *Greathouse*, 655 F.2d at 1034), *cert. denied*, 513 U.S. 1091 (1995).  As

discussed below, the court finds petitioner has not met this burden.

The respondent alleges the OCCA considered and found no merit in this claim, and under the applicable federal habeas corpus statutes, habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The time limits set forth in the IAD are triggered upon the filing of a detainer by the receiving state. *United States v. Mauro*, 436 U.S. 340 (1978); *Gilbreath v. State*, 651 P.2d 699, 700 (Okla. Crim. App. 1982). The detainer in petitioner's case was filed on November 12, 2002, and received by him on November 13, 2002 (Docket #6-9). There is nothing in the record, however, indicating petitioner requested final disposition of the pending Sequoyah County charges, so the time limitations of the IAD did not commence. *See Fex v. Michigan*, 507 U.S. 43, 52 (1993). Furthermore, the OCCA properly found that the detainer was filed less than one week before petitioner discharged his Missouri sentence, so the IAD no longer applied to him. *See State v. Holley*, 571 A.2d 892, 896-97 (Md. App. 1990) (holding that "the I.A.D. does not apply to a prisoner whose term of imprisonment in a sister state ends prior to the expiration of 180 days after the State's Attorney receives a request for final disposition of the pending indictment, information, or complaint from the prisoner") (citing cases in n.6).

After careful review, the court concludes that the determination of this issue by the

OCCA was consistent with federal law.  Ground II of this petition is meritless.

**Ground III:  Speedy Trial**

Petitioner claims in Ground III that he was denied his constitutional right to a speedy trial.  He was identified as a suspect by June 1999, but charges were not filed for almost two additional years, and he was not brought to Sequoyah County on the charges for another 16 months.  The OCCA addressed this claim as follows:

> [I]n determining whether [petitioner] was denied a speedy trial, we consider the following factors to be paramount: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.  *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Lott v. State*, 98 P.3d 318, 327 (Okla. Crim. App. 2004).  [Petitioner] was serving a sentence in another jurisdiction for more than half the time at issue here (17 months out of 28 months).  His first objection to the delay in prosecution came not as a demand for speedy trial, but rather as a motion to dismiss charges.  Even if this were considered a proper "demand" for a speedy trial, [petitioner] was transported to Oklahoma within weeks thereof, and his trial proceedings were completed in less than a year.  We find no evidence that his defense was materially harmed by the delay.  We conclude that [petitioner] was not denied his right to a speedy trial.  *Barker*, 407 U.S. at 534-35; *Smith v. Hooey*, 393 U.S. 374, 383 (1969); *Simpson v. State*, 744 P.2d 207, 208-09 (Okla. Crim. App. 1987).

*Weicht*, slip op. at 3.

> . . . Whether and how a defendant asserts his right [to a speedy trial] is closely related to the other factors we have mentioned.  The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences.  The more serious the deprivation, the more likely a defendant is to complain.  The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.  We emphasize that failure to assert the right will make it difficult for a defendant to prove he was denied a speedy trial.

> . . . Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect.  This Court

9

has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.

*Barker*, 407 U.S. at 531-32 (footnote omitted).

Petitioner's claim regarding the pre-indictment delay is entitled only to "limited protection under the Due Process Clause of the Fifth Amendment." *United States v. Johnson*, 120 F.3d 1107, 1110 (10th Cir. 1997) (citing *United States v. Lovasco*, 431 U.S. 783, 789 (1977)). "Preindictment delay is not a violation of the Due Process Clause unless the defendant shows both that the delay caused actual prejudice and that the government delayed purposefully in order to gain a tactical advantage. *Id*. (citing *United States v. Engstrom*, 965 F.2d 836, 839 (10th Cir.1992). Here, the court finds that petitioner has failed to make either showing.

As discussed by the OCCA in petitioner's direct appeal, *Barker* established a balancing test which weighs "the conduct of both the prosecution and the defendant" to determine whether a defendant has been deprived of his constitutional speedy trial rights. *Barker*, 407 U.S. at 530. The four factors to be balanced are "[l]ength of delay; the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id*.

While no single factor is "either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial," *Barker*, 407 U.S. at 533, "the length of the delay is to some extent a triggering mechanism." *Id*. at 530. In *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992), the Supreme Court noted that depending on the nature of the charges, the lower courts have generally found delay approaching one year to be presumptively prejudicial, thereby triggering the *Barker* balancing test. In addition, the Tenth Circuit has held that "[d]elays approaching one year generally satisfy the requirement of presumptive

prejudice." *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir.), *cert. denied*, 548 U.S. 908 (2006). Here, the almost 28-month delay is presumptively prejudicial and triggers *Barker* analysis.

### Length of the Delay

The court next examines the length of the delay as one of the *Barker* factors. The court must consider "the extent to which [such] delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004)) (quotations omitted). "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531.

Petitioner was not indicted for an "ordinary street crime;" instead, he was charged with four serious property offenses, two of which involved the intentional burning of a dwelling and an automobile. The record, however, shows that the investigation of the crimes, including elimination of other suspects, was completed and the case was "stalled" until a Kansas fire marshal agent contacted Oklahoma officials (Tr. 74-75). There is nothing in the record indicating the State required extensive investigation between the time petitioner was arrested and when he was tried.

Here, the State issued its arrest warrant on June 22, 2001, but petitioner was not tried until October 16, 2003. The court finds the almost 28-month delay exceeds the "bare minimum needed to trigger judicial examination of the claim." *Jackson*, 390 F.3d at 1261 (citing *Doggett*, 505 U.S. at 652. Therefore, this delay factor weighs against the State, and consideration of the other *Barker* factors is required. *Id*.

### Reason for the Delay

11

The burden is on the State to provide an inculpable explanation for the delay. *Jackson*, 390 F.3d at 1261.

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531 (footnote omitted).

Here, neither party has presented evidence concerning the reason for delay. Nonetheless, "[a] defendant has no duty to bring himself to trial; the State has that duty . . . ." *Barker*, 407 U.S. at 527. The weight of the State's negligence in failing to conclude its criminal prosecution "compounds over time as the presumption of evidentiary prejudice grows." *Doggett*, 505 U.S. at 657. Using *Doggett's* sliding scale approach, the court finds the delay of 28 months in petitioner's case was considerably less and more tolerable than *Doggett's* six-year delay, and the delay in petitioner's case would not have presumptively posed an inordinate threat to the fairness of his trial.

### Assertion of Right

"The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. 531-32. "A pro se criminal defendant does not have to make a procedurally perfect assertion of his speedy trial rights, but must make a 'reasonable assertion' of the right so as to put authorities on notice of his Sixth Amendment claim." *Douglas v. Cathel*, 456 F.3d 403, 418 (3d Cir. 2006) (citation omitted).

The record shows that on October 23, 2002, petitioner filed his first motion to dismiss

for failure to prosecute, and Sequoyah County responded by placing a detainer on him on November 12, 2002. He then was transferred to Oklahoma, and his preliminary hearing was held on February 20, 2003. From March 2003 through August 2003, he filed numerous motions to dismiss for failure to prosecute, and his trial commenced on October 16, 2003. The court finds petitioner clearly put the prosecutor on notice of his right to a speedy trial, a factor favoring him in the *Barker* analysis.

### Prejudice

Prejudice should be assessed in the light of the interests which the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532.

> Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Id.*

Petitioner alleges the primary prosecution witness John Wakeley had very poor memory of the details of his testimony. Petitioner further asserts the lead investigator had destroyed or lost physical evidence and photographs from the crime scene, making it impossible for petitioner to challenge the investigator's recollection or the accuracy of his conclusions.

The record shows that Mr. Wakeley was an accomplice and a witness for the State. Petitioner cites no specific lapses in Wakeley's memory that prejudiced him, but the record

shows Wakeley could not recall minor details, such as which of Randall Weicht's vehicles was driven to the crime scene (Tr. 148-49), what kind of beverage bottle was used as a container for gasoline (Tr. 156), the exact date and vehicle driven when another arson was committed in Kansas (Tr. 159-60), whether petitioner wore gloves at the Jetton residence (Tr. 161), and what type of shoes Wakeley, petitioner, and Randall Weicht wore the night of the Jetton arson (Tr. 161). Wakeley also could not remember what Randall Weicht did after the men returned to Neosho, Missouri, with the items stolen from the Jetton home (Tr. 162). Mr. Wakeley's testimony about the petitioner's charged crimes, however, was quite specific.

Regarding Oklahoma State Fire Marshal Agent Ronald Gene Wheat's testimony, petitioner alleges Agent Wheat lost or destroyed physical evidence and photographs of the crime scene, making it impossible for petitioner to challenge Wheat's recollection or conclusions. The record shows Agent Wheat testified about his investigation of the fire on the Jetton's property and the burned pickup, and defense counsel cross-examined him about the preservation of evidence and other matters in an attempt to attack the integrity of the investigation (Tr. 76-111). Agent Wheat's photographs of the crime scenes were given to the district attorney, and Wheat did not know the location of the photos at the time of trial (Tr. 80, 95-96). He did, however, have his Fire Investigation Origin and Cause Report which was completed the day of the fires (Tr. 84-85). Petitioner has not shown that the photographs actually were missing or destroyed, only that Agent Wheat did not have them when he testified. The court further finds that petitioner has not demonstrated that the delay in his trial caused the photographs to be unavailable.

Petitioner also complains that footprints from the Jetton's property were destroyed. Agent Wheat testified there were two distinctive footprints that could have matched a

particular suspect named Robert Dyer (Tr. 103). Wheat, therefore, cut out the material with the footprints and removed them from the property (Tr. 103-04). When the footprints did not match Mr. Dyer's shoes, Wheat destroyed the footprints (Tr. 104). Again, petitioner has not shown how the delay in his trial resulted in the destruction of the footprints, or that the footprints even were relevant to his defense.

**Balancing of Factors**

"[The four *Barker* factors] must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

> In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Id*. (footnote omitted).

Here, the court finds the delay was attributable mainly to the government, but its acts were negligent, not malevolent, and there is no evidence the delay was planned to gain a tactical advantage. When petitioner asserted his speedy trial rights, he was transferred to Oklahoma within a reasonable time. While the delay in petitioner's trial was presumptively prejudicial, the court finds the prejudice to his defense and the collateral prejudice he presumably suffered were minimal. Applying all the *Barker* factors to this case, the court concludes petitioner's claim of a speedy trial violation must fail. While the Court of Criminal Appeals' failed to find the delay in petitioner's trial was presumptively prejudicial, it did find there was no material harm to his defense under the *Barker* standard. *Weicht*, slip op. at 3. Because "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254," *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006),

this ground for habeas relief fails.

## Ground IV:  Evidence of Other Crimes

Petitioner complains in Ground IV that at trial the State presented evidence implicating him in other crimes.  John Wakeley, the admitted participant in the charged offenses, testified that petitioner also participated in setting a fire in an Oswego, Kansas, airport (Tr. 159-60).  In addition, Wakeley testified that petitioner had been to petitioner's brother's storage facility where property the three had stolen was stored (Tr. 162-63).

Kevin Kitterman, an investigator in the Oswego, Kansas airport fire and two vehicle fires in May 1999, testified that petitioner was a suspect in those crimes (Tr. 175-76, 178-81). Kitterman further indicated petitioner was involved in a fire that involved robbing someone at gunpoint and setting a car on fire, while the victim was underneath the vehicle (Tr. 181). Petitioner claims these allegations were not included in the *Burks* notice.  He argues this evidence was irrelevant to the charges in his Sequoyah County prosecution and served to inflame the jury.

The record shows the trial court conducted a hearing on the admissibility of Kitterman's and Wakeley's testimony, and ruled it could be presented as evidence of a common scheme or plan, pursuant to *Burks v. State*, 594 P.2d 771 (Okla. Crim. App. 1979) (Motion Tr. 9/29/2003 at 30).  The jury was instructed that evidence was presented that the defendant "allegedly committed offenses other than that charged in the Information."  (Jury Instruction No. 29; Docket # 6, Exhibit L).  The instruction further stated that the evidence of other offenses was "received solely on the issue of the defendant's alleged common scheme or plan, . . . and [t]his evidence is to be considered by you only for the limited purpose for which it was received."  *Id*.  The OCCA denied relief on this claim in petitioner's

direct appeal, finding "the trial court did not abuse its discretion in permitting some evidence of similar offenses committed by [petitioner] and his accomplices; this evidence demonstrated a common scheme of peculiar arsons, thefts and burglaries, and helped establish the identity of the perpetrators in this case." *Weicht*, slip op. at 3-4 (citing Okla. Stat. tit. 12, § 2404(B); *Lott v. State*, 98 P.3d 318, 335 (Okla. Crim. App. 2004)).

The respondent alleges petitioner's challenge to the state court's evidentiary rulings does not raise issues proper for federal habeas review. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Erroneous evidentiary rulings are not grounds for federal habeas relief, unless the rulings render the state proceedings so fundamentally unfair as to violate due process. *See Williamson v. Ward*, 110 F.3d 1508, 1522-23 (10th Cir. 1997).

Here, the court finds the evidence at issue showed similarities between the Oklahoma and Kansas arsons and demonstrated a common scheme of unusual arsons, thefts, and burglaries that assisted in determining the identities of the perpetrators. *See Weicht*, slip op. at 3-4. Furthermore, the testimony about the use of a storage facility to house stolen property showed part of the ongoing criminal activity after the property was taken. With respect to Mr. Kitterman's testimony about the man who was robbed at gunpoint and had his car lit on fire while the man was underneath it, the court stopped this line of questioning, and Kitterman did not name petitioner as the perpetrator (Tr. 181-82). Petitioner, therefore, was not prejudiced by the comment. This court finds no evidence that admission of the evidence caused petitioner's trial to be fundamentally unfair or that he was denied his right to due process. This ground for habeas relief is meritless.

**Ground V:  Waiver of Counsel**

Petitioner next asserts his waiver of counsel at the preliminary hearing was not knowing and voluntary, and he was prejudiced because the evidence at the preliminary hearing was not sufficient to bind him over for trial. On direct appeal the OCCA denied relief on the claim:

> [T]he record shows [petitioner] repeatedly expressed his desire to represent himself in the initial stages of the prosecution; that the court accommodated his desire by providing him access to the county law library; and that at the preliminary hearing, [petitioner] reiterated his desire to proceed *pro se* despite warnings by the magistrate. The magistrate was not required to either talk [petitioner] out of his decision or coach him with specific legal advice. [Petitioner's] election between two fundamental rights--the right to counsel at preliminary hearing, and the right to represent himself--was intelligently made.

*Weicht*, slip op at 4 (citing *Parker v. State*, 556 P.2d 1298, 1300-01 (Okla. Crim. App. 1976)). The respondent alleges petitioner made a knowing and voluntary waiver of counsel at his preliminary hearing, and the OCCA's holding on this issue was not contrary to or an unreasonable application of Supreme Court precedent.

The record shows that petitioner requested permission to represent himself at his November 27, 2002, arraignment. On January 12, 2003, he wrote a letter to Judge Sprouse, stating he had represented himself at a December 11, 2002, hearing (Docket #6, Exhibit N). The judge addressed petitioner's decision to represent himself at his preliminary hearing:

> THE COURT: The Court does note that Mr. Weicht has been brought before the Court previous to this date for initial arraignment. The Court has made inquiry of Mr. Weicht whether or not he's requested court appointed counsel. Mr. Weicht had denied or determined that he did not want court appointed counsel and advised the Court he elected to represent himself. . . .

> THE COURT: Okay. Mr. Weicht, before you announce ready I want to make certain that you understand the ground rules. The State is represented by an attorney, this is a legal proceeding in which the rules of evidence do apply and there are other procedural rules which apply. I as a judge cannot be your attorney, I cannot give you legal advice, you cannot ask me to give you

legal advise [sic]. I can give general direction as to what we are doing and what you should do, but I cannot give specific legal advice. Do you understand that?

MR. WEICHT:        Yes, sir.

THE COURT:        For the record I do need to get the affirmative answer from you. You do not--let me rephrase that. You have not requested court appointed counsel, correct?

MR. WEICHT:        No, sir.

THE COURT:        You have advised the Court that you do in fact want to represent yourself.

MR. WEICHT:        Yes, sir.

THE COURT:        And, in doing so the Court has made available the opportunity to have court appointed counsel, which you have declined, is that correct?

MR. WEICHT:        Yes, sir.

THE COURT:        Now, understanding that this is a trial in the sense that the burden is on the State, but at the same time we are going to be dealing with legal matters, is it still your affirmative statement that you wish to represent yourself here today?

MR. WEICHT:        Yes, sir.

THE COURT:        Okay. All right. . . .

(Docket # 6, Exhibit H at 2-4).

A defendant has the right to an attorney at the critical stage of a preliminary hearing in the criminal process. *Coleman v. Alabama*, 399 U.S. 1, 9-10 (1970). He also has the constitutional right to represent himself, but he must "knowingly and intelligently" forgo his right to counsel. *Faretta v. California*, 422 U.S. 806, 834-35 (1975) (citations omitted).

"Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

> There is a presumption that a thorough inquiry should be made. *See United States v. Hughes*, 191 F.3d 1317, 1323 (10th Cir. 1999). It is "ideal" when the trial judge conducts a "thorough and comprehensive formal inquiry" including topics such as the nature of the charges, the range of punishment, possible defenses, and a disclosure of risks involved in representing oneself *pro se. United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir. 1991). However, there is "[n]o precise litany" of questions that must be asked of defendants who choose self-representation. *United States v. Padilla*, 819 F.2d 952, 959 (10th Cir. 1987). Additionally, a defendant's technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to waive counsel. *Faretta*, 422 U.S. at 836.

> Nevertheless, failure to conduct this inquiry does not require automatic reversal if the surrounding facts and circumstances indicate that the defendant "understood his right to counsel and the difficulties of *pro se* representation." *United States v. Willie*, 941 F.2d 1384, 1389. Even if a defendant "conduct[s] his own defense ultimately to his own detriment, his choice must be honored . . . ." *Faretta*, 422 U.S. at 834.

*United States v. Turner*, 287 F.3d 980, 983 (10th Cir. 2002).

Petitioner complains that if he had been represented by competent counsel, there would have been an objection to the fire investigator's hearsay testimony that linked petitioner to the crimes. The record, however, clearly shows the court expressly advised petitioner that the rules of evidence and other procedural rules applied to the hearing, and petitioner stated he understood the court's statement. The court further advised petitioner that it could not give him legal advice, but petitioner still chose to represent himself.

After careful review, the court finds the court made a proper inquiry regarding

petitioner's decision to represent himself, and petitioner's choice was made knowingly and intelligently. The court further finds the OCCA's determination of this issue was consistent with federal law. This ground for habeas corpus relief fails.

## Ground VI: Sufficiency of the Evidence in Count 4

Finally, petitioner asserts the evidence was not sufficient to prove the essential element of Breaking in Count 4, Second Degree Burglary of the outbuilding on the Jetton property. He claims John Wakeley's testimony was that the perpetrators entered the building through an open door, so there was no "breaking." On direct appeal the OCCA found that "evidence was presented that one of the structures on the victim's property (a shed) was, in fact, a closed structure and exhibited signs of forced entry." *Weicht*, slip op. at 4. "The fact that property was stolen from adjacent 'open' structures on the premises reasonably supported an inference that the shed was forcibly entered by [petitioner] and/or his accomplices with an intent to steal items therein as well." *Id*. (citing *Williams v. State*, 762 P.2d 983, 986 (Okla. Crim. App. 1988); *Myers v. State*, 654 P.2d 1073, 1074 (Okla. Crim. App. 1982)). The OCCA's findings of fact are presumed correct, unless the petitioner rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." *Case v. Mondagon*, 887 F. 2d 1388, 1392 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court has repeatedly emphasized the deference the reviewing court

owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.), *cert. denied*, 498 U.S. 904 (1990) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)).

The applicable statute provides:

> Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin-operated or vending machine or device with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree.

Okla. Stat. tit. 21, § 1435. "'[B]reaking' in the burglary context includes any act of physical force, however slight, by which obstructions to entering are removed." *Roberts v. State*, 29 P.3d 583, 586 (Okla. Crim. App. 2001) (footnote omitted).

The record shows that Agent Wheat testified that the lock on the shed's door had been knocked off (Tr. 66-67). Wheat further testified the ladder to the attic inside the shed was down, and items inside had been moved around (Tr. 67). Mr. Jetton, the victim, testified that

several items were missing from his shed (Tr. 120, 123-25).

After careful review, the court finds the evidence was sufficient under *Jackson v. Virginia* to support petitioner's conviction in Count 4 of the charges. Therefore, the OCCA's decision on this claim was not contrary to, or an unreasonable application of, clearly established federal law, and the OCCA's determination was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). This claim also is meritless.

**ACCORDINGLY**, the Magistrate Judge recommends that this action be, in all respects, dismissed.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the parties are given ten (10) days from being served with a copy of this Report and Recommendation to file with the Clerk of the Court any objections with supporting briefs. Failure to file timely written objections to the Magistrate Judge's recommendations may result in waiver of appellate review of factual and legal questions. *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

**DATED** this 30th day of January 2009.

_____
**KIMBERLY E. WEST**
**UNITED STATES MAGISTRATE JUDGE**